**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIAM H. GRAY,
Plaintiff-Appellant,

v.                                                                                      No. 96-1859

PETOSEED COMPANY, INCORPORATED,
Defendant-Appellee.

GLEN KINARD,
Plaintiff-Appellant,

v.                                                                                      No. 96-1860

PETOSEED COMPANY, INCORPORATED,
Defendant-Appellee.

JAMES W. WILLIAMS,
Plaintiff-Appellant,

v.                                                                                      No. 96-1861

PETOSEED COMPANY, INCORPORATED,
Defendant-Appellee.

WILLIAM H. GRAY,
Plaintiff-Appellee,

v.                                                                                      No. 96-1862

PETOSEED COMPANY, INCORPORATED,
Defendant-Appellant.

GLEN KINARD,
Plaintiff-Appellee,

v.                                                              No. 96-1863

PETOSEED COMPANY, INCORPORATED,
Defendant-Appellant.

JAMES W. WILLIAMS,
Plaintiff-Appellee,

v.                                                              No. 96-1864

PETOSEED COMPANY, INCORPORATED,
Defendant-Appellant.

Appeals from the United States District Court
for the District of South Carolina, at Beaufort.
Dennis W. Shedd, District Judge.
(CA-95-3882-9-19, CA-95-3883-9-19, CA-95-3884-9-19)

Submitted: July 15, 1997

Decided: November 18, 1997

Before WILKINS, HAMILTON, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John Paul Detrick, Ronnie Lanier Crosby, PETERS, MURDAUGH,
PARKER, ELTZROTH & DETRICK, Hampton, South Carolina, for
Appellants. Keating L. Simons, III, Derek Farrell Dean, LAW

OFFICES OF KEATING L. SIMONS, III, P.A., Charleston, South
Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Appellants William H. Gray, Glen Kinard, and James W. Williams,
watermelon farmers, filed actions against Petoseed Company, Inc., in
South Carolina state court asserting claims for fraud and compensa-
tory contempt. Petoseed removed the cases to district court. Appel-
lants appeal from the district court's orders dismissing their fraud
claims and denying their motion for reconsideration. Petoseed appeals
from the district court's orders remanding the contempt claims to state
court.

Appellants previously filed separate actions in state court against
Petoseed seeking damages for crop losses sustained as a result of
watermelon seeds Petoseed sold to Appellants. In those complaints,
Appellants claimed that Petoseed produced and sold to them seeds
contaminated with "Watermelon Fruit Blotch" disease that damaged
their watermelon crop for the year. Through interrogatories, Appel-
lants requested a description of all tests that Petoseed had performed
on the seeds to determine the nature of the alleged disease. Following
court orders compelling Petoseed to respond to the interrogatories,
Petoseed stated that its tests were negative for the existence of the
bacteria that caused Watermelon Fruit Blotch disease. Appellants,
relying on Petoseed's response to the interrogatories, settled their
claims against Petoseed and received consideration for releasing Peto-
seed from further liability. After their settlements, Appellants learned
that Petoseed had withheld material information during discovery.
Specifically, Petoseed failed to disclose test results of a small sample
of seeds that were positive for the bacteria known to cause Water-
melon Fruit Blotch.

3

In these consolidated actions, Appellants claimed that Petoseed's alleged misrepresentation concerning its test results induced them to settle their claims in the prior suits. Appellants further maintained that Petoseed was in contempt of the state court for failing to disclose the watermelon seed test results as required by court orders. Appellants requested damages.

Petoseed removed these cases to district court and simultaneously filed a motion to dismiss for failure to state a claim. Appellants opposed the motion to dismiss and moved to remand, contending that the district court lacked subject matter jurisdiction over their claims.

The district court determined that removal was proper. However, the court remanded Appellants' contempt claims for lack of jurisdiction, finding that those claims had to be brought before the court that issued the order allegedly violated. The court dismissed Appellants' fraud claims after finding that Appellants were required by state law to tender and return the settlement amounts paid in connection with the prior settlement in order to maintain their fraud claims in the present actions. Appellants moved for reconsideration.

The court denied Appellants' motion and concluded that removal was proper, subject matter jurisdiction existed, and dismissal of the fraud claims was proper. Although the court ruled that it had subject matter jurisdiction over the compensatory contempt claims, it nonetheless abstained from resolving the contempt claims under principles of comity and respect for the state court, and consequently, remanded the contempt claims to state court.

Appellants timely appeal the dismissal of the fraud claims[1] and Petoseed cross-appeals the remand of the contempt claims.[2]

Appellants argue that the district court lacked jurisdiction over the contempt claims because the state court where the contempt occurred has exclusive jurisdiction over the matter. They contend that if the contempt claims were not removable, the entire action was not

_____

[1] Nos. 96-1859/1860/1861.

[2] Nos. 96-1862/1863/1864.

4

removable, and therefore, the district court did not enjoy jurisdiction over the fraud claims. We need not determine whether the district court had jurisdiction over the contempt claims because the court did not exercise jurisdiction over them.

Petoseed claims that the court had jurisdiction over the contempt claims and it erred by abstaining from exercising jurisdiction. As Petoseed notes, the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief. See Quackenbush v. Allstate Ins. Co., ___ U.S. ___, 64 U.S.L.W. 4379, 4383 (U.S. June 3, 1996) (No. 95-244). However, the Supreme Court has "not held that abstention principles are completely inapplicable in damages actions." Id. at 4386. There are circumstances which require a federal court having jurisdiction of an action to nonetheless abstain from deciding doubtful questions of state law. See, e.g., Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 27-30 (1959). Further, the district court's decision to abstain is reviewed for an abuse of discretion. See New Beckley Mining Corp. v. International Union, United Mine Workers of Am., 946 F.2d 1072, 1074 (4th Cir. 1991); Brandenburg v. Seidel, 859 F.2d 1179, 1195 (4th Cir. 1988); Kentucky W. Va. Gas Co. v. Pennsylvania Pub. Util. Comm'n, 791 F.2d 1111, 1115 (3d Cir. 1986).

We find that the district court did not abuse its discretion by abstaining from entertaining the contempt claims because the principle of comity applies to a case in which the state's contempt process is involved. See Juidice v. Vail, 430 U.S. 327, 335 (1977). "A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest." Id. Thus, federal-court interference with the state's contempt process is an offense to the state's interest. Id. at 336. The court correctly abstained from hearing the contempt claims because Petoseed's alleged defiance of the state court orders places the integrity of that court at stake. Further, the state court has the authority and ability to fashion an appropriate remedy if it finds Petoseed in contempt of its orders. It would be a serious interference with the orderly administration of justice for the district court to decide when a state court order has been violated and how it should be reme-

5

died. See Ulmet v. United States, 888 F.2d 1028, 1031 (4th Cir. 1989); Feller v. Brock, 802 F.2d 722, 728 (4th Cir. 1986); Gregory-Portland Indep. Sch. Dist. v. Texas Educ. Agency, 576 F.2d 81, 83 (5th Cir. 1978). Although there is no pending state litigation in this case, the principles of comity apply because the state nonetheless has an important interest in its contempt process and interfering with that process would unduly interfere with the legitimate activities of the state. See Juidice, 430 U.S. at 336. Therefore, the district court correctly abstained from entertaining the contempt claims and remanded them to state court.

The district court had subject matter jurisdiction over Appellants' fraud claims because the statutory requirements for diversity jurisdiction were met. Only civil actions over which the district court would have "original jurisdiction" if filed in district court may be removed. Hunter Douglas Inc. v. Sheet Metal Workers Int'l Ass'n, Local 159, 714 F.2d 342, 345 (4th Cir. 1983). District courts have original jurisdiction of civil actions where the value in controversy exceeds $50,000 and is between citizens of different states. 28 U.S.C. § 1332(a) (1994).[3] As the party seeking to invoke the jurisdiction of the federal court, Petoseed bore the burden of establishing that diversity jurisdiction existed. See McNutt v. General Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936). It is undisputed that in each action filed by Appellants the parties are of diverse citizenship and the amount in controversy exceeds $50,000. Thus, Petoseed has carried its burden of showing that the court had diversity jurisdiction over the claims.

Appellants' claims are severable because they alleged two actionable wrongs: fraudulent inducement to settle their prior lawsuits and violation of court orders by Petoseed entitling them to damages. See American Fire & Cas. Co. v. Finn, 341 U.S. 6, 13 (1951); Able v. Upjohn Co., 829 F.2d 1330, 1332 (4th Cir. 1987). [4] Further, there is

_____

[3] The 1996 Amendment to § 1332 increased this amount to $75,000. See 28 U.S.C.A. § 1332 (West Supp. 1997). However, because the case was removed to federal court before the effective date of the amendment, we employ the $50,000 amount.

[4] We make no ruling as to whether state law provides for civil compensatory contempt damages.

6

no statutory authority which precluded the district court from severing the claims and retaining jurisdiction over one while remanding the other.

Lastly, Appellants claim that to the extent the district court had jurisdiction over the fraud claims, it erred by dismissing them. Because the district court exercised diversity jurisdiction over the fraud claims, state law was controlling. The South Carolina Supreme Court has stated that when a party to a compromise settlement wishes to avoid a valid release and be restored to his original rights, he must restore the other party to his original position by returning or offering to return the consideration received under the compromise. See Jones v. Massingale, 163 S.E.2d 217, 219 (S.C. 1968); see also Dunaway v. United Ins. Co. of Am., 123 S.E.2d 353 (S.C. 1962); Taylor v. Palmetto State Life Ins. Co., 12 S.E.2d 708 (S.C. 1940); State Farm Mut. Auto. Ins. Co. v. Turner, 399 S.E.2d 22, 23 (S.C. Ct. App. 1990). Therefore, because Appellants failed to tender the settlement amounts they received in the prior suits, the district court correctly found that they could not maintain their fraud claims in the present action.

Accordingly, we affirm the district court's orders remanding Appellants' claims for compensatory contempt to state court, dismissing Appellants' fraud claims, and denying Appellants' motion for reconsideration. We further deny Appellants' motion for certification of state law to the South Carolina Supreme Court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7